IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CECILIA GALARZA,

       Plaintiff,

v.                                          1:15-cv-01081-JCH-LF

DIANE DICK, individually, and
CAPELLA UNIVERSITY, INC.,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on defendants Diane Dick and Capella

University, Inc.'s (collectively "defendants") motion to dismiss plaintiff Cecilia Galarza's

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Doc.

8, which was fully briefed on January 19, 2016, Doc. 17.  District Judge Judith C. Herrera

referred this matter to me pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and

*Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), to provide the

Court with a recommendation on the ultimate disposition of the case.  Doc. 11.  Having reviewed

the submissions of the parties and the relevant law, I recommend that the Court grant defendants'

motion and give Galarza the opportunity to amend her complaint.

I.      **Background Facts[1] and Procedural Posture**

Capella University, Inc. ("Capella") is a Higher Learning Commission accredited online

university.  Doc. 1-1, ¶ 6.  Diane Dick is the learner affairs specialist at Capella.  *Id.* ¶ 22.

Galarza enrolled as a student in Capella's Doctor of Social Work program in the spring of 2010.

*Id.* ¶ 7.

---

[1] The background facts are derived from the complaint and must be taken as true for the purposes
of defendants' motion to dismiss.  *Burnett v. Mortg. Elec. Registration Sys., Inc*., 706 F.3d 1231,
1235 (10th Cir. 2013).

By the summer of 2013, Galarza had successfully completed all of her coursework for enrollment in Capella's dissertation program and began her dissertation coursework with a cumulative GPA of 3.038.  *Id.* ¶¶ 8–9.  Galarza completed four quarters of her dissertation program and reached Milestone 3.  *Id.* ¶ 10.  Milestone 3 required her to achieve school approval of a Scientific Merit Review ("SMR") proposal before progressing to Milestone 4 of the dissertation program.  *Id.*  During her pursuit to achieve approval of her SMR, Capella changed Galarza's mentor four times without her input.  *Id.* ¶ 11.  Galarza submitted her SMR proposal but did not receive adequate instruction or proposed changes for continuing her dissertation proposal.  *Id.* ¶¶ 12, 15.  Capella denied and ignored her repeated attempts to speak to her mentor on the telephone.  *Id.* ¶¶ 13–14.  Capella did not provide Galarza with an objective method in reviewing her SMR proposal.  *Id.* ¶ 16.

In December of 2014, Capella disenrolled Galarza and withdrew her from the dissertation program for failure to maintain academic standing.  *Id.* ¶ 17.  Galarza appealed Capella's decision to withdraw her, but her appeal was denied.  *Id.* ¶¶ 19–20.  Galarza then attempted to contact Dick for clarification on the rationale for denying her appeal, but Dick refused to speak with her.  *Id.* ¶¶ 22–23.  Capella did not give Galarza access to the dissertation success program, and did not assess her most recent SMR before disenrolling her and withdrawing her from the dissertation program.  *Id.* ¶¶ 24–25.  Galarza paid Capella over $80,000 in tuition prior to being disenrolled.  *Id.* ¶ 28.

Dissatisfied with the results of her appeal, Galarza filed a complaint in the State of New Mexico's Second Judicial District Court for breach of contract, misrepresentation, fraud, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and unfair

trade practices.  Doc. 1-1.  Defendants removed the case to this Court and filed the instant

motion to dismiss.  Docs. 1, 8.

## II.    Standard of Review

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all

well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to

the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir.

2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual

allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  In other words, a complaint must include enough facts to

state a claim to relief that is plausible on its face.  *Id.* at 555–56.  The allegations must be

sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for

relief."  *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009)

(internal quotation marks and citation omitted).

The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as

true) to suggest" that he or she is entitled to relief.  *Twombly*, 550 U.S. at 556.  Bare legal

conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by

factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'"  *Id.* (quoting FED. R. CIV. P. 8(a)(2)).  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Id.* at 663.

While the Court must construe a pro se plaintiff's complaint broadly under this standard,

the generous construction to be given the pro se litigant's allegations "does not relieve the

plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (1991).  "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.* at 1110; *see also Whitney v. New Mexico.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).  Courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74.  Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

Galarza's complaint asserts several state claims, including breach of contract, misrepresentation, fraud, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and unfair trade practices.  Doc. 1-1.  Because defendants removed this case based on diversity jurisdiction (Doc.1), this Court will apply the substantive law of New Mexico and federal procedural law.  *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1277 (10th Cir. 2011).

### III.  <u>Discussion</u>

### A.  **Matters Outside the Pleadings Will Not Be Considered By the Court.**

When ruling on a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215–16 (10th Cir. 2007) (quoting FED. R. CIV. P. 12(b)).  However, "courts have broad discretion in determining whether or not to accept material beyond the pleadings."

*Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998).  When a court excludes

the materials and does not consider evidence beyond the pleadings, a motion to dismiss will not

be converted and will, instead, be determined under Rule 12(b)(6).  *See Lymon v. Aramark*

*Corp.*, 728 F. Supp. 2d 1222, 1262 (D.N.M. 2010), *aff'd,* 499 F. App'x 771 (10th Cir. 2012).

The Court will not consider matters outside of the pleadings, including exhibits to Galarza's

initial response. Doc. 14 at 9–22, or facts recited by defendants that are not alleged in the

complaint, *see* Doc. 8 at 2.  Accordingly, the Court will not convert the motion to dismiss into a

motion for summary judgment.

### B.  Count I:  Breach of Contract against Capella

Assuming that Galarza could establish that the relationship between a student and a

private university is contractual in nature,[2] she has failed to allege sufficient facts that would

---

[2] Federal courts have found that a graduate student does not have a federal constitutional right to a continued graduate education.  *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009).  However, the "basic legal relation[ship] between a student and a private university or college is contractual in nature."  *Id.*; *see also Corso v. Creighton University*, 731 F.2d 529, 532 (8th Cir. 1984) ("The relationship between a university and a student is contractual in nature.")  A student may be able to establish that an implied contract exists between her and the university that entitles her to a specific right.  *Bissessur*, 581 F.3d at 601.  "In order to establish this type of entitlement, the student must point to an identifiable contractual promise that the university failed to honor."  *Id.* at 602 (internal quotations omitted).

New Mexico has not definitively decided whether the relationship between a student and a university is contractual in nature.  In *Ruegsegger v. W. NM Univ. Bd. of Regents*, 2007-NMCA-030, ¶¶ 29–30, 141 N.M. 306, 312–13, 154 P.3d 681, 687–88, however, the New Mexico Court of Appeals addressed whether a student handbook—which contained a sexual harassment policy that established the university's commitment to an environment free of sexual discrimination—created an implied contract.  The court found that the handbook's provisions provided guidelines for the operation of the university and not a guarantee to specific rights.  *Id.* ¶ 30, 141 N.M. at 313, 154 P.3d at 688.  Nonetheless, the court indicated that it may accept the terms of a student handbook as imposing implied contractual obligations if it were reasonable for the student to expect that the defendant was contractually obligated to perform under the terms set forth in the handbook.  *Id.* ¶ 33, 141 N.M. at 314, 154 P.3d at 689.  The court recognized cases similar to this one that "involve claims by students that their respective educational institutions had breached promises relating to academic matters or access to educational programs," *id.* ¶¶ 32–33, 141 N.M. at 313, 154 P.3d at 688, but that issue was different from the student's claim in *Ruegsegger*.  Consequently, the court did not address that issue.

establish a claim for breach of contract against Capella.  To state a claim for breach of contract under New Mexico law, a plaintiff must allege "the existence of a contract, breach of the contract, causation, and damages."  *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011).  A contract may be express or implied.  An "express contract" is a contract that contains an exchange of explicit terms, either orally or in writing, that show that the parties intended to be bound by those terms.  *See* BLACK'S LAW DICTIONARY 273, (8th ed. 2005); *Lucas v. United States*, 25 Cl. Ct. 298, 303 (1992) ("An express contract must be manifested by words, either oral or written, which contains agreement and/or mutual assent."). "For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent."  *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 634, 81 P.3d 573, 577.

An implied contract is not expressly stated but can be inferred "from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."  *Orion Tech. Res., LLC v. Los Alamos Nat. Sec., LLC*, 2012-NMCA-097, ¶ 9, 287 P.3d 967, 971.  An implied contract may be evidenced by the course of conduct between the parties, written representations, oral representations, or a combination of representations and conduct.  *Id*. ¶ 10, 287 P.3d at 971–72.  Whether an implied contract arises from the representations of the parties depends on whether the representations create a reasonable expectation of contractual rights.  *Id*. ¶ 10, 287 P.3d at 972.  The expectation is measured by how definite, specific, or explicit the representation or conduct relied upon has been.  *Id*.  The New Mexico Court of Appeals has suggested that a student may be able to establish a claim for breach of contract arising out of the implied contract created by the terms in a student handbook, for example.  *Ruegsegger*, 2007-NMCA-030, ¶¶ 22–23, 141 N.M. at 312, 154 P.3d at 687.  In determining whether an implied

contract exists, the Court must consider whether a student could reasonably expect that the university would be obligated to perform the alleged promise. *Id.*

Galarza's complaint does nothing more than state that a contract existed and was breached. Doc. 1-1 at 3–4. None of the allegations in the complaint mention any explicit or implicit promises made by Capella that formed the basis of a contract. Galarza does not point to language from a student handbook, brochure, website, or any literature from the university that could be construed as an offer that she accepted. Galarza's complaint does not contain facts concerning: (1) what, if any, promises or representations Capella made to her; (2) how these promises were communicated; (4) what she promised in return; or (3) how these promises created a contract. *See Bissessur*, 581 F.3d at 604. Galarza merely states that she paid Capella over $80,000.00, and Capella "breached the contract by wrongfully withholding instruction and unjustly withdrawing [her] from the doctoral program." Doc. 1-1 at 4. These allegations are precisely the sort of conclusory allegations and legal conclusions that fail to raise Galarza's right to relief above the speculative level.

The cases cited by Galarza do not assist her. *Sibeto v. Capella Univ.*, No. 2:13-CV-1674, 2014 WL 3547344 (W.D. Pa. July 17, 2014) and *Meyer v. Cmty. Coll. of Beaver Cty.*, 625 Pa. 563, 93 A.3d 806 (2014) are cases interpreting the Pennsylvania Unfair Trade Practices Consumer Protection Law and are inapplicable to this case. In *Harris v. Saint Joseph's Univ.*, Civ. Action No. 13-3937, 2014 WL 1910242 (E.D. Pa. May 13, 2014), the university defendants conceded that "the relationship between a private educational institution and an enrolled student is contractual in nature," and that "the terms of that contract are outlined in the Handbook." *Id.* at *17. Further, the Pennsylvania district court found that while plaintiff established the existence of a contract, his claim relied on conclusory and insufficient allegations. *Id.* at *3

("Conclusory allegations such as these, with no clear averments as to what statement or regulations included in the Handbook . . . were violated or breached, are insufficient to survive a motion to dismiss.").  Here, even if the Court assumes that a contract existed, Galarza has provided only conclusory allegations that a contract was breached.

In her amended response, Galarza elaborates on her factual allegations and provides detailed descriptions of her experiences with Capella.  Doc. 15.  These additional details do not defeat Capella's motion to dismiss.  First, as discussed above, the Court will not consider matters outside of the pleadings.[3]  Additional facts submitted in the amended response are matters outside of the pleadings.  Second, Galarza cannot amend her complaint without the defendants' consent or the Court's permission.  FED. R. CIV. P. 15(2).  Third, elaborating on the allegations contained in her complaint does not cure the critical defect that there are no allegations in the complaint that describe Capella's promises or representations that form the basis of a contract. Finally, Galarza asserts that she believes that "the moment I enrolled with Capella University I entered into a contract with them where I agreed to purchase and they agreed to prove a doctoral level education."  Doc. 15 at 6.  Regardless of this belief, Galarza has not provided the terms of the contract that establish that Capella agreed to provide her with a doctoral level education. Without a contract, there can be no breach.

### C.  Count II:  Misrepresentation against Capella

New Mexico recognizes two types of misrepresentation:  negligent misrepresentation and fraudulent misrepresentation.  *See Saylor v. Valles*, 2003-NMCA-037, ¶¶17, 21, 133 N.M. 432, 438, 63 P.3d 1152, 1158.  To establish negligent misrepresentation, a plaintiff must show "(1) that defendants made a material misrepresentation of fact to plaintiffs, (2) that plaintiffs relied upon such representation, (3) that defendants knew the representation was false at the time it was

---

[3] The "pleadings" in this case include only the complaint and answer.  *See* FED. R. CIV. P. 7(a).

made or made it recklessly, and (4) that defendants intended to induce plaintiffs to rely on such representation." *Id.* ¶ 17, 133 N.M. at 438, 63 P.3d at 1158.  To establish a fraudulent misrepresentation claim, a plaintiff must show that the opposing party "(1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies." *Id.* ¶ 21, 133 N.M. at 438, 63 P.3d at 1158.

Here, Galarza fails to allege sufficient facts to establish either a negligent or fraudulent misrepresentation claim.  While she contends Capella "supplied false information" to her, Doc. 1-1 at 4, she does not state what that false information was, why it was false, whether Capella knew it was false, or how she relied on it to her detriment.  Without these allegations, Galarza's claims for negligent and fraudulent misrepresentation must fail.

**D.  Count III:  Fraud against Capella**

In addition to her misrepresentation claim, Galarza alleges fraud against Capella.  "The elements of fraud include (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation."  *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 216, 164 P.3d 90, 97.  As previously discussed, Galarza's complaint does not identify a misrepresentation of fact made by Capella and, therefore, cannot state a claim for fraud.

**E.  Count IV:  The Implied Covenant of Good Faith and Fair Dealing against Capella and Dick**

Closely related to Galarza's contract claim is her claim for a breach of the covenant of good faith and fair dealing.  She alleges that both defendants "breached the covenant of good

faith and fair dealing, which is an integral part of Defendants' business and contract formed with Galarza." Doc. 1-1 at 5.

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co., Inc. v. Males,* 1990-NMSC-105, ¶ 12, 111 N.M. 57, 60, 801 P.2d 639, 642 (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* New Mexico recognizes that a cause of action for breach of the covenant of good faith and fair dealing sounds in contract. *See Bourgeous v. Horizon Healthcare Corp.,* 1994-NMSC-038, ¶¶ 16–17, 117 N.M. 434, 438–39, 872 P.2d 852, 856–57.[4] "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 144 N.M. 449, 452, 188 P.3d 1200, 1203.

As discussed above, Galarza has not established that she had a contract with Capella. There are also no allegations that explain how Capella and Dick wrongfully and intentionally used a contract to her detriment. Galarza alleges that when she attempted to contact Dick for clarification on the rationale for denying her appeal, her request to speak with Dick was denied. Doc. 1-1 ¶¶ 22–23. There are no allegations that Capella or Dick promised that she would be able to have a conversation with Dick following the denial of her appeal. Simply put, there are no allegations establishing that Galarza was denied the benefit of an agreement because she has

---

[4] The New Mexico Supreme Court explained that tort recovery for breach of the covenant of good faith and fair dealing would be permissible only where a special relationship existed, such as between an insurer and its insured. *Bourgeous*, 1994-NMSC-038, ¶ 17, 117 N.M. at 439, 872 P.2d at 857. Ms. Galarza specifically states that defendants breach the covenant of good faith and fair dealing as "an integral part of Defendants' business and contract formed with Ms. Galarza," Doc. 1-1 ¶ 50, and does not allege any special relationship. Accordingly, the Court will analyze her claim as one that sounds in contract, not in tort.

not defined the agreement or what benefits she was entitled to under its terms.  Defendants cannot be held liable for breaching the duty of good faith and fair dealing with regard to the terms of an agreement that has not been established.  Therefore, Galarza's claim must fail.

**D.      Count V:  Intentional Infliction of Emotional Distress against Capella and Dick.**

To state a claim for intentional infliction of emotional distress, Galarza must allege:  "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress."  *Baldonado v. El Paso Nat. Gas Co*., 2008-NMCA-010, ¶¶ 22–23, 143 N.M. 297, 305, 176 P.3d 286, 294, *aff'd sub nom. Baldonado v. El Paso Nat. Gas Co.,* 2008-NMSC-005, 143 N.M. 288, 176 P.3d 277.  "[T]he failure of any one of the elements will defeat the claim."  *Trujillo v. N. Rio Arriba Elec. Co-op, Inc*., 2002-NMSC-004, ¶ 27, 131 N.M. 607, 617, 41 P.3d 333, 343.

"As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress."  *Id.* ¶ 26, 131 N.M. at 617, 41 P.3d at 343 (internal quotation and citation omitted).  The outrageous conduct must rise to the level of being "beyond all possible bounds of decency" and "utterly intolerable in a civilized community."  *Id.* ¶ 25, 131 N.M. at 616, 41 P.3d at 342.

Galarza's allegations do not point to any specific instances in which Capella's or Dick's conduct was so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Id*.  Galarza alleges that although she successfully completed four quarters of her dissertation program and reached Milestone 3, she was disenrolled for failure to maintain

academic standing.  Doc. 1-1 at 2.  It is not uncommon for a university to disenroll a student for failure to maintain academic standing, and a court will not second guess that decision.  *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 89–91 (1978) ("Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making. . . .  Courts are particularly ill-equipped to evaluate academic performance.")

Galarza does not deny that she failed to maintain academic standing, but provides reasons for that failure.  For example, Galarza contends that during the dissertation coursework, Capella changed her mentor four times without her input, she did not receive adequate instruction or proposed changes, her attempts to reach her mentor by telephone were denied, and Capella failed to provide her with an objective method for reviewing her SMR proposal.  Capella denied her appeal, upheld her withdrawal, and she was not given access to the dissertation success program. Further, Dick declined her request for a telephone conversation.  However, Galarza's complaint does not establish that she was entitled to participate in the selection of her mentors or to contact them by telephone.  She does not explain how the instruction she was receiving was not adequate or whether she even qualified for the dissertation success program.  Dick's refusal to discuss her appeal over the telephone is not particularly outrageous behavior given the nature of an "online" university.  Consequently, none of the conduct alleged by Galarza can be characterized as outrageous or beyond the bounds of decency.

Galarza's claim also must fail because there are insufficient allegations to support the view that Galarza suffered severe emotional distress.  "To recover emotional distress damages, those damages must be severe."  *Trujillo*, 2002-NMSC-004, ¶ 28, 131 N.M. at 617, 41 P.3d at

343 (internal quotation and citation omitted). "Severe emotional distress means that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." *Id.* (internal quotation and citation omitted). In other words, "the distress must be so severe that no reasonable person could be expected to endure it." *Id.* (internal brackets omitted). Although it appears Galarza was frustrated with the situation, Galarza does not allege that she suffered any emotional distress whatsoever.[5] The complaint is devoid of any factual allegations that Capella or Dick's actions caused her distress so severe that no reasonable person could be expected to endure it. For these reasons, Galarza's claim for intentional infliction of emotional distress must fail.

### F.  Count VI:  Unfair Trade Practices Against Capella University

Galarza's final claim is brought pursuant to New Mexico's Unfair Practices Act,  N.M. STAT. ANN. § 57-12-1 et seq. (1978) ("UPA").  "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 439, 166 P.3d 1091, 1093 (internal citation omitted).

> In order to state a claim under the UPA, a complaint must contain allegations to the effect that:  (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Id.*

---

[5] In her amended response, Galarza elaborates on the effects she suffered as a result of defendants' conduct. Doc. 15 at 12. Although these facts may support Galarza's claim that she suffered severe emotional distress, they were not alleged in the complaint. As discussed above, the Court will not consider matters outside of the pleadings—including facts in Galarza's response to defendants' motion to dismiss—that were not alleged in the complaint.

Similar to her claims for misrepresentation and fraud, Galarza's complaint fails to state a claim under the UPA because she does not identify a false or misleading oral or written statement, visual description or representation of any kind made by Capella.  Galarza merely reiterates language from the UPA defining an "unfair or deceptive trade practice."  *Compare* Doc. 1-1 at 7 *with* 1978 N.M. STAT. ANN. § 57-12-1(D).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, cannot defeat a motion to dismiss.  *Iqbal*, 556 U.S. at 663.

## IV.     Recommendation

Galarza's complaint lacks sufficient factual allegations to state a claim for relief that is plausible on its face.  Therefore, I recommend that the Court grant defendants Capella University and Diane Dick's motion to dismiss.  Doc. 8.  I further recommend that the Court dismiss the complaint without prejudice and—given Galarza's pro se status—permit Galarza to amend her complaint within 21 days of the order of dismissal.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge